**S. AMANDA MARSHALL, OSB #95347**
United States Attorney
District of Oregon
**Steven T. Mygrant, OSB #03129**
Special Assistant United States Attorney
**Leah K. Bolstad, OSB #05203**
1000 S.W. Third, Suite 600
Portland, OR 97204-2902
Telephone:    (503) 727-1000
Facsimile:    (503) 727-1117
stevenmyg@co.clackamas.or.us
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:11-CR-00207-01-HZ |
| v. | GOVERNMENT'S SENTENCING MEMORANDUM |
| SAMUEL CALEB MERTZ, | |
| Defendant. | Sentencing Date: July 9, 2012, at 9:30 a.m. |

The United States of America, by S. Amanda Marshall, United States Attorney for the District of Oregon, Steven T. Mygrant, Special Assistant United States Attorney, and Leah K. Bolstad, Assistant United States Attorney, hereby submits the following sentencing memorandum.

### I.    GOVERNMENT'S SENTENCING RECOMMENDATION

For the reasons set forth below, the government endorses the recommendation by the United States Probation Office and recommends that the Court impose a sentence of 262 months' imprisonment, a statutory minimum five year term of supervised release and a $100 fee assessment.  Such a sentence properly addresses the nature and seriousness of the offense,

provides just punishment, affords adequate deterrence and significantly protects the public from further crimes of this defendant.

## II.   SUMMARY OF PROCEEDINGS

A Clackamas County grand jury indicted Samuel Mertz and Jonalynn Nelson on multiple narcotics and firearms related offenses on April 1, 2011.  The case was subsequently reviewed and accepted for federal prosecution based on the quantity of methamphetamine seized, Mertz's possession of a firearm in connection with drug trafficking offense, Mertz's prior history of distributing methamphetamine and Mertz's status as a Career Offender pursuant to United States Sentencing Guideline § 4B1.1.  A federal grand jury subsequently indicted Mertz and Nelson on narcotics and firearms related offenses and the Clackamas County District Attorney's Office moved to dismiss the state charges on May 26, 2011.

Co-defendant Jonalynn Nelson entered a guilty plea to Possession with Intent to Distribute Methamphetamine in an amount exceeding five grams of actual methamphetamine.  Evidence demonstrated Nelson's active involvement in the drug trafficking scheme.  However, evidence also demonstrated Mertz as the leader of this criminal organization.  Furthermore, Nelson had no prior criminal history and no active role in carrying or possessing the seized semiautomatic firearm.  Nelson appeared before Judge Hernandez on April 17, 2012, and received a sentence of 75 months imprisonment.

On February 24, 2012, defendant Mertz entered a guilty plea to Count One charging him with Conspiracy to Distribute Methamphetamine in an amount exceeding 50 grams of actual methamphetamine.  The parties stipulate to relevant conduct of 83 grams of actual methamphetamine with a base offense level of 32, prior to adjustments.

### III.  FACTUAL BACKGROUND

On the evening of March 31, 2011, Clackamas County Interagency Task Force (CCITF) officers used a cooperating informant (CI) to place an order of methamphetamine from a known drug supplier, Samuel Mertz.  PSR ¶ 12.  In a recorded call, Mertz agreed to deliver a half-ounce of methamphetamine to the CI.  PSR ¶ 12.  The CI advised officers that Mertz's girlfriend, co-defendant Jonalynn Nelson, likely would drive to the location with Mertz in the passenger seat.  PSR ¶ 13.  The CI further advised officers that Mertz was a member of the Irish Pride gang syndicate and frequently was armed.  PSR ¶ 13.

CCITF officers stationed themselves strategically in the parking lot and awaited the arrival of Mertz and Nelson.  PSR ¶ 13.  At approximately 9:00 p.m., Mertz and Nelson arrived at the Winco parking lot on SE 82nd Drive in Happy Valley.  The CI identified Mertz as the front seat passenger of a Buick driven by co-defendant, Jonalynn Nelson.  PSR ¶ 13.

CCITF officers quickly boxed the Buick into a parking spot and immediately conducted a high-risk stop because of concerns Mertz would be armed.  PSR ¶ 14.  As officers approached the Buick, they observed Mertz making furtive movements down and towards the driver's floorboard.  PSR ¶ 14.  In contrast, Nelson complied with police directives and put her hands in the air as soon as the officers initiated the stop.  PSR ¶ 14.  CCITF Officer Deputy Plummer, who approached the Buick on the passenger side, observed Mertz toss a plastic bag onto his own floorboard.  Police took both individuals into custody.  PSR ¶ 15.

Officers initially searched both individuals.  Mertz had $3,271 in cash on his person.  PSR ¶ 15.  Nelson had approximately two ounces of methamphetamine (33 grams actual) in her left rear pocket.  PSR ¶ 15.

Officers subsequently searched the vehicle and found a large Ziploc bag on the passenger floorboard where Mertz had been sitting. PSR ¶ 15. Inside the bag, officers discovered approximately one-half ounce of heroin (12.6 grams), five Oxycontin pills and five smaller baggies of methamphetamine, totaling approximately three ounces (50 grams actual methamphetamine). PSR ¶ 15. On the driver's side floorboard (where Nelson had been sitting), officers found a loaded Glock firearm.[1] PSR ¶ 16. The area where the gun was seized is consistent with the location officers observed Mertz reaching furtively. PSR ¶ 16. Furthermore, the gun was balanced upside-down, with the grip in the air in a manner that could not have been maintained while driving. PSR ¶ 16.

During the booking process, co-defendant Nelson (who was not a convicted felon) asked an officer, "Why is he being charged with the gun?" and further added "it was on my floorboard." PSR ¶ 17. Because she had invoked her right to counsel, officers did not engage in further conversation. PSR ¶ 17.

Officers obtained a search warrant for three cell phones found in the car. When officers searched the phones, they found numerous text messages on Mertz's phone for what appeared to be customer orders for heroin, cocaine and methamphetamine. PSR ¶ 17. Photographs from one of the phones showed Mertz holding rubber-banded stacks of U.S. currency in $50 and $100 denominations (date stamped June 12, 2010). PSR ¶ 17. Another photograph showed Mertz holding what appeared to be an AK-47 assault rifle and a shotgun, with a handgun tucked in his

---

[1] This firearm, a Glock (serial #PKZ610) was reported stolen from a residential burglary of a law enforcement officer in Washington County one week prior to the arrests of Mertz and Nelson. PSR ¶ 16.

waistband.  PSR ¶ 17.  The phone contained additional photographs of a revolver and a MAC-11 semiautomatic pistol with a silencer.  PSR ¶ 17.

Officers also listened to many recorded jail calls made by Mertz primarily to two associates, identified as Samuel Cole and Michael Wubbold.  PSR ¶ 18.  During the jail conversations, Mertz made statements consistent with acknowledging he transferred the gun to Nelson as police approached the vehicle.  PSR ¶ 19.  Mertz also expressed concern that his fingerprints could be lifted from the Glock and expressed hope that co-defendant Nelson would take responsibility for the handgun.  PSR ¶ 19.  In a phone call from April 9, 2011, Mertz told Wubbold how he "luckily" tossed the Glock to Nelson "really quick like," and he hoped his fingerprints were not on the weapon.  PSR ¶ 19.

Jail calls also revealed Mertz making significant attempts to influence co-defendant Nelson's testimony by directing her to take responsibility for the firearm.  During one jail call, Mertz told Wubbold he had talked to Nelson when they went to court and acknowledged he had asked Nelson to "take everything."  PSR ¶ 20.  Mertz said Nelson agreed that Ms. Nelson would claim possession of the firearm.  PSR ¶ 20.  During a recorded three way call facilitated by Wubbold between inmates Nelson and Mertz on April 10, 2011, Mertz told Nelson, "I still want you to take all the stuff," "continue on with the plan and take all you can," "the less on me the better," and "continue with the plan and you have been the most stand-up bitch."  PSR ¶ 20.

Additional jail calls revealed conversations about the status of the informant that are very concerning to the government.  During the calls, Mertz discussed the informant's status and the informant's availability to testify at a trial.  PSR ¶ 21.  In one of the in-custody calls between Mertz and Nelson on April 10, 2011, Nelson told Mertz, "If I get out, me and Ruskie will have a

surprise pickup party for him" referring to the informant, with Mertz's reply of "yeah, yeah."  PSR ¶ 21.  During an April 25, 2011, phone call, Wubbold told Mertz the informant "should be in the ground soon after" the informant's anticipated release date.  PSR ¶ 21.  In a call from May 11, 2011, Mertz told Wubbold that if the "rat doesn't testify they have no fuckin' case," to which Wubbold said, "he ain't gonna tesify" and "he might not come testify."  PSR ¶ 21.

The seized methamphetamine was submitted to the Oregon State Crime Lab for purity analysis.  Laboratory testing confirmed 33 grams of actual methamphetamine from Nelson's pocket and 50 grams of actual methamphetamine from the ziploc bag found on Mertz's side of the vehicle.  PSR ¶ 15.

## IV.    SENTENCING CONSIDERATIONS

While not bound by the Sentencing Guidelines, district courts must consult the Guidelines and take them into account when sentencing.  *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 767 (2005).  Even though the Guidelines are advisory, they remain influential in an effort to ensure national consistency.  *Gall v. United States*, 128 S. Ct. 586, 596 (2007) ("to secure nationwide consistency, the Guidelines should be the starting point and initial benchmark" for sentencing); *see also United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) ("[The] continuing duty of district courts to consult the Guidelines is statutory.").

After the parties are given a chance to argue for a sentence they believe is appropriate, the Court should consider the § 3553(a) factors and decide if they support the sentence suggested by the parties.  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (citing *Gall,* 128 S. Ct. at 596-97, n.6).  The Court must make an individualized determination based on the facts, may not presume that the Guideline range is reasonable, and should not give the Guidelines factors more or

Government's Sentencing Memorandum, 3:11-CR-207-01-HZ, *Mertz*                    Page 6

less weight than other § 3553(a) factors. *Id.* If the Court decides an outside-Guidelines sentence is warranted, the Court must ensure the justification is sufficiently compelling to support the degree of variance. *Id.* And finally, once a sentence is selected, the Court must explain it sufficiently to permit meaningful appellate review. *Id.* at 992.

Factors to consider under 18 U.S.C. § 3553(a) include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to provide just punishment for the offense; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to protect the public from further crimes of the defendant; and the need to provide the defendant with needed training, care, or treatment.

## V.     PLEA AGREEMENT AND RECOMMENDED SENTENCE

### A. RELEVANT CONDUCT

The parties agree that defendant is responsible for 83 grams of actual methamphetamine. Plea Agreement ¶ 6; PSR ¶ 26.

### B. MANDATORY MINIMUM SENTENCE

The parties agree that the offense of Conspiracy to Distribute Methamphetamine in amount exceeding 50 grams of pure methamphetamine triggers a statutory mandatory minimum sentence of ten years pursuant to Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A)(viii).     Plea Agreement ¶ 13; PSR ¶ 9.

///

///

### C. FIREARM ENHANCEMENT

The parties further agree that defendant's base offense level is subject to a two-level enhancement based on the possession of a firearm in connection with the drug trafficking offense pursuant to Guideline § 2D1.1(b)(1). Plea Agreement ¶ 10; PSR ¶ 27.

### D. SAFETY VALVE

The parties agree that defendant does not meet the criteria for safety valve eligibility pursuant to Guideline § 2D1.1(b)(1). Plea Agreement ¶ 11; PSR ¶ 7.

### E. ACCEPTANCE OF RESPONSIBILITY

The government recommends a three-level reduction to recognize defendant's acceptance of responsibility pursuant to § 3E1.1.   Plea Agreement ¶ 7; PSR ¶ 32.

### F. BASE OFFENSE LEVEL

The PSR correctly outlines defendant's base offense level as a 32 prior to enhancements. PSR ¶ 26.   The parties further stipulated to a two-level enhancement for the firearm and a three-level reduction for acceptance of responsibility.   Plea Agreement ¶¶10, 7; PSR ¶ 26, 32. The U.S. Probation Department further recommends a two-level enhancement for defendant's efforts to influence the testimony of his co-defendant, Ms. Nelson.   PSR ¶ 30.   Therefore, U.S. Probation calculates an adjusted offense level of a 33 prior to the application of the career offender guideline.   PSR ¶ 33.

### G. CAREER OFFENDER

The parties agree that defendant qualifies as a career offender because the defendant was over 18 years of age when he committed the underlying offense of Conspiracy to Distribute Methamphetamine and the defendant has two separate prior felony drug trafficking convictions

from 2005. Therefore, under Guideline § 4B1.1(a), defendant is a career offender. Because the statutory maximum sentence of the offense of conviction is life, a base offense level 37 applies pursuant to § 4B1.1(b). Furthermore, as a career offender, defendant's Criminal History Category is designated as a Level VI under §4B1.1. Plea Agreement ¶ 6; PSR ¶ 34, 47.

### H. GUIDELINE CALCULATION AND STRUCTURED OPEN SENTENCING

The parties stipulate that an adjusted base offense level of 37 and Criminal History Category VI apply pursuant to the career offender guideline, § 4B1.1. Plea Agreement ¶ 13; PSR ¶ 34. After a three-level reduction for acceptance of responsibility, the parties anticipate a Total Offense Level 34 and Criminal History Category VI which produces an advisory guideline range of 262-327 months. As a condition of defendant's guilty plea, the government agrees to recommend the low end of 262 months' imprisonment. Plea Agreement ¶ 8. Finally, the plea agreement allows defendant to seek a departure sentence based on mitigation sufficiently compelling to justify a reduction down to the statutory minimum of ten years' imprisonment. Plea Agreement ¶ 13.

### I. THE GOVERNMENT'S RECOMMENDED SENTENCE

The defendant engaged in a significant drug trafficking operation with his co-defendant, Jonalynn Nelson. This incident was not an isolated transaction. Instead, evidence revealed an active operation in which the defendant engaged in the distribution of sizeable quantities of methamphetamine and heroin in exchange for significant quantities of cash. As evidence of this operation, Mertz was found in possession of $3,271 in cash at the time of his arrest. Furthermore, cell phone evidence depicted large stacks of cash consistent with a burgeoning drug distribution operation. Subsequent analysis of the cell phones revealed extensive customer lists and contacts

documented in their personal cell phones.  Additionally, the defendants were poly-drug distributors as evidenced by the methamphetamine, Oxycontin and heroin seized from the vehicle. The methamphetamine seized from the defendants constituted a significant quantity of 83 grams of pure methamphetamine.  Most significantly, officers seized a stolen and loaded Glock firearm from the vehicle.  Officers considered Mertz to be a significant safety risk with a history of weapons offenses.  Evidence seized from the vehicle and the phones corroborated his affinity for weapons.

The defendant stands before the Court as a Career Offender pursuant to Guideline § 4B1.1. The low-end of that career offender guideline range is 262 months' imprisonment.  The government recognizes and appreciates the seriousness of defendant's status as a career offender – the Sentencing Commission crafted this guideline to capture a group of criminal offenders who pose the most serious threats to our communities.  It is the government's position that Mr. Mertz is precisely the category of offender the Commission envisioned in drafting this guideline.  Mr. Mertz has demonstrated his criminal behaviors since the age of 13.  He has repeatedly engaged in narcotics trafficking at an alarmingly increasing rate coupled with repeated possession and use of firearms in connection with these drug trafficking offenses.  Mr. Mertz has demonstrated he is uncontrollable out of custody as evidenced by his multiple documented felony arrests, two previous convictions for distributing commercial quantities of methamphetamine in 2005 and four post-prison supervision violations since 2008.  Furthermore, Mr. Mertz has demonstrated his lack of self control and persistent criminal behavior while in custody through his assault on another inmate, his attempts to influence the testimony of his co-defendant and most seriously, his

discussions and plans to bring serious harm to the government's cooperating witness. It is for these reasons the government is compelled to recommend a 262 month term of imprisonment.

It is worth repeating that the quantity of pure methamphetamine possessed by Mertz triggers a ten year minimum sentence pursuant to Title 21, U.S.C., Sections 846, 841(a)(1) and 841(b)(1)(A)(viii). The defendant could be subject to this penalty in the absence of a stolen semiautomatic firearm, if he had no prior drug trafficking convictions, if he never made efforts to influence his co-defendant, if he never assaulted another inmate while in custody and if he never engaged in taped conversations with associates of "a surprise pickup party" for the government's cooperating witness in which the informant "should be in the ground" soon after his release from custody. If the fact that the defendant possessed a firearm in connection with this drug trafficking offense is added to the equation, the defendant would face a mandatory consecutive five year term pursuant to 18 U.S.C. 924(c). Defendant's exposure on the statutory minimum of ten years coupled with the 924(c) mandatory consecutive sentence alone would trigger a 15 year sentence. However, it is defendant's actions since his incarceration that are the most telling. These actions are viewed by the government as aggravating factors that merit the imposition of a true career offender guideline sentence, albeit low-end, of 262 months' imprisonment.

In contrast to the defendant's abhorrent actions listed above, the defendant offers no facts in mitigation to warrant a departure or variance from the guideline sentence. As referenced in *Carty* and *Gall,* the Court certainly has the ability to decide whether an outside-Guidelines sentence is warranted. However, the government asserts no justification is sufficiently compelling to support any form of departure or variance from the guideline sentence. Instead, it is the government's

position that the proscribed term of 262 months' imprisonment will provide necessary deterrence, punishment and community protection.

## VI. CONCLUSION

The arrest of Samuel Mertz marked the culmination of a significant investigation by the Clackamas County Interagency Task Force. The Career Offender guideline is a necessary tool to protect the community from individuals who repeatedly engage in crimes of violence and drug trafficking. Mr. Mertz is no exception. Mertz validated the Sentencing Commission's concerns about career criminals when he arrived at this drug transaction with a stolen and loaded semiautomatic handgun. Additionally, Mertz's actions since his arrest include assaulting another inmate, making significant efforts to influence the testimony of Jonalynn Nelson and engaging in conversations with associates about causing significant harm to the government's cooperating witness. The defendant offers no compelling mitigation to justify a departure from the guideline sentence. For the reasons set forth above, the government urges the Court to find that a sentence

///

///

///

///

of 262 months' imprisonment, followed by five years of supervised release, and a fee assessment of $100 satisfies the requirement of 18 U.S.C. § 3553(a) as a "sentence sufficient, but not greater than necessary" to meet the purposes of § 3553(a)(2).

DATED this 3rd day of July 2012.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney

s/ Steven T. Mygrant
STEVEN T. MYGRANT, OSB #03129
Special Assistant United States Attorney

s/ Leah K. Bolstad
LEAH K. BOLSTAD, OSB #052039
Assistant United States Attorney